UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHARD CABAN

                     Plaintiff,

        – against –

NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION PLAN; DAVID
STEWART; JOSEPH A. GEIGER; DAVID T.
MEBERG; and MONICA SCHMIDT,

               Defendants.

19-cv-6205 (JGK)

MEMORANDUM OPINION AND
ORDER

JOHN G. KOELTL, District Judge:

    The pro se plaintiff Richard Caban brings this action against the New York City District Council of Carpenters Pension Plan (the "Plan"), David Stewart, Joseph Geiger, David Meberg, and Monica Schmidt (together, the "defendants") alleging a denial of benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.  The defendants moved to dismiss for failure to state a claim and for summary judgment, arguing that the claims are time barred.  Because Mr. Caban has failed to plead facts to show plausibly that the defendants violated ERISA, the motion to dismiss is **granted**. The claims are also time barred, and therefore, the defendants' motion for summary judgment is also **granted**.

I.

    Mr. Caban is a carpenter and a member of the United Brotherhood of Carpenters and Joiners, Local 157 in Manhattan

1

(the "Union"). Am. Compl. ¶ 1. He has been a member in good standing and has paid dues since 1993. Id. ¶ 2.

The New York City District Council of Carpenters Pension Fund (the "Fund") is a multiemployer defined benefit pension plan, as defined by ERISA Sections 3(2) and 3(37).[1] Ortiz Decl. ¶ 4; 29 U.S.C. §§ 1002(3) & (37). The Fund is governed by the Board of Trustees, which gets its authority from the Fund's Amended Agreement and Declaration of Trust. Ortiz Decl. ¶ 5, Ex. A at 8-10. An individual's benefits are determined based on the Fund's governing documents in effect when the individual's covered employment ended. See id. ¶¶ 11-12, Exs. D-E. The New York City Council of Carpenters Pension Plan, effective January 1, 1999 as amended through July 1, 2001 (the "Plan"), is a qualified pension plan under ERISA and was the Fund's governing document in 2006, when Mr. Caban ceased his covered employment. Am. Compl. ¶ 3; Ortiz Decl. ¶¶ 8, 10-13, Exs. C-E.

Members of the Union earn Vesting Credits for work done through covered employment. See Am. Compl. ¶ 4. Vesting Credits are earned according to the number of hours of covered employment accrued by an individual in a given year. To earn 0.25 Vesting Credits, an employee must work at least 300 hours

---

[1] While the Fund is not named in the caption, it is the trust fund that holds assets and pays pension benefits to Union members. Ortiz Decl. Ex C. at 4, 7. The Fund is listed in the "Defendant Information" section of the Amended Complaint. See Am. Compl. p.4.

of covered employment in a year.  Id. ¶ 5.  To earn 1 Vesting
Credit in a year, an employee must work 870 or more hours of
covered employment.  Ortiz Decl. Ex. C at 11.  Once an employee
earns 5 Vesting Credits, the employee becomes fully vested in
the employee's pension benefits, and those benefits become
nonforfeitable.  Am. Compl. ¶ 4.  An employee with fewer than 5
Vesting Credits is considered non-vested.  Between 1993 and
2005, Mr. Caban earned 2.75 Vesting Credits.  Id.

In 2006, Mr. Caban suffered a workplace injury from a
collapsing scaffold that prevented him from working as a
carpenter for several years.  Id. ¶ 16.  During the period in
which he was unable to work, Mr. Caban remained in good standing
in the Union by continuing to pay his Union dues, but he was
considered inactive because he did not take carpentry work.  Id.
¶ 17.  Mr. Caban resumed his employment as a carpenter and his
active status in the Union in 2018.  Id. ¶ 18.

The Plan provides that if a non-vested individual fails to
earn at least 0.25 Vesting Credits in a year, the individual
incurs a 1-year break in service.  Ortiz Decl. Ex. C at 12-14.
If a non-vested individual has 5 consecutive 1-year breaks in
service, the individual incurs a permanent break in service.
Id.  When a non-vested individual incurs a permanent break in
service, the individual permanently forfeits all previously
earned Vesting Credits.  Id.  Beginning in 2006, Mr. Caban, who

3

had fewer than 5 Vesting Credits and therefore was a non-vested individual, experienced more than 5 consecutive 1-year breaks in service.  See Am. Compl. ¶¶ 16-19.  Accordingly, at the end of 2010, Mr. Caban incurred a permanent break in service.

Mr. Caban asserts that he was a non-vested individual because of improper discrimination.  He alleges that while he was working between 1993 and 2005, the Union discriminated against disfavored groups, such as Latinos.  Id. ¶ 7.  Mr. Caban, who is Latino, helped to create the Union's Latino Group to stop workplace discrimination.  Id. ¶¶ 8-9.  The Union allegedly allowed certain non-Union workers to take jobs that should have gone to Union workers.  Id. ¶¶ 11-15.  Mr. Caban alleges that he would have earned 5 Vesting Credits but for the race discrimination in distributing work assignments between 1993 and 2005.  Id. ¶ 21.  The Union allegedly allowed certain non-Union members to "cut the line" to obtain assignments, despite non-Union members' ineligibility for those assignments. Id. ¶ 22.  Mr. Caban brought his concerns to the Union's internal hotline and to the National Labor Relations Board, but he did not get a response.  Id. ¶ 10.

On April 21, 2010, the Fund warned Mr. Caban that he would incur a permanent break in service and permanently lose his Vesting Credits if he did not work 300 hours by the end of 2010. Defs'. Rule 56.1 Stmt. ¶ 5.  Almost nine years later, on March

4

12, 2019, Mr. Caban inquired about the status of his Vesting
Credits.  Am. Compl. ¶ 19.  He was told that he had incurred a
permanent break in service, due to his time not working as a
carpenter, and therefore, he forfeited his 2.75 Vesting Credits.
Id. ¶¶ 19-20.  Mr. Caban then sent a letter to the District
Council Board of Trustees asking for reinstatement of his
Vesting Credits, and on June 14, 2019, the District Council
denied Mr. Caban's request and notified him of his right to
bring a suit under ERISA.  Id. ¶¶ 25-26.  Mr. Caban seeks
reinstatement of the 2.75 Vesting Credits that he earned before
his permanent break in service.

The defendants brought this motion to dismiss or in the
alternative for summary judgment on December 30, 2019.  The
original deadline to file a brief in opposition was February 17,
2020.  Dkt. 18, Tr. at 14.  The plaintiff did not submit a
response to the defendants' motion or ask the Court for an
extension.  On February 25, 2020, the Court entered an Order
noting that the plaintiff's time to respond to the present
motion had passed and extended the deadline to respond to March
13, 2020.  Dkt. 28.  The plaintiff sent a letter to the Court
but did not respond substantively to the motion, and on March
11, 2020, the Court entered an Order attaching the letter from
the plaintiff and extending the deadline to respond to the
present motion to April 24, 2020.  Dkt. 31.  The plaintiff did

5

not respond by April 24, 2020, and on May 6, 2020, the Court entered an Order noting that the time for the plaintiff to respond to this motion had passed and extending the time to respond to May 22, 2020.  Dkt. 33.  The Order warned that if there were no response, the Court would decide the motion on the current papers.  The plaintiff did not respond to the motion by May 22, 2020 and on June 2, 2020, the Court entered another Order noting that the time for the plaintiff to respond had passed again; nonetheless, the Court extended the deadline to respond for a final time to June 19, 2020.  Dkt. 34.  The plaintiff has not responded to the motion, and therefore the Court decides the motion on the current papers.

## II.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550

U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.  In deciding such a motion, a court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that either are in the plaintiff's possession or were known to the plaintiff when the plaintiff brought suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

When faced with a pro se complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks, alterations, and citation omitted).  "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted).  Thus, although the Court is

"obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id.; see also Yajaira Bezares C. v. The Donna Karan Co. Store LLC, No. 13-CV-8560, 2014 WL 2134600, at *1 (S.D.N.Y. May 22, 2014).

The standard for granting summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); see also Gallo, 22 F.3d at 1223.  Summary judgment is improper if any evidence in the record from any source would enable a reasonable inference to be drawn in favor of the nonmoving party.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its burden, the nonmoving party must produce evidence in the record showing the existence of a genuine issue of material fact and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

### III.

Mr. Caban seeks reinstatement of his Vesting Credits. While the plaintiff does not specify the provisions of ERISA under which he claims to be entitled to relief, the Amended Complaint suggests the following:  claims for denial of benefits under Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B); breach of

fiduciary duty under Section 502(a)(2), 29 U.S.C. § 1132(a)(2);
for equitable relief under Section 502(a)(3), 29 U.S.C.
§ 1132(a)(3); and for discrimination under Section 510, 29
U.S.C. § 1140.[2]

**A.**

Mr. Caban's claim under Section 502(a)(1)(B) fails because
the terms of the Plan established that a permanent break in
service would lead to a forfeiture of his Vesting Credits.
Section 502(a)(1)(B) provides that a civil action may be brought
by a participant or beneficiary of a plan "to recover benefits
due to him under the terms of his plan, to enforce his rights
under the terms of the plan, or to clarify his rights to future
benefits under the terms of the plan."  29 U.S.C.
§ 1132(a)(1)(B).  To bring a claim under Section 502(a)(1)(B), a
plaintiff must assert that the plaintiff is owed a benefit under
the terms of the plan, and that the defendant denied the
plaintiff that benefit in violation of ERISA or the terms of the
relevant plan.  See Devlin v. Empire Blue Cross & Blue Shield,
274 F.3d 76, 82 (2d Cir. 2001) ("[P]laintiffs assert under this
section a contractual right under a benefit plan.")  (quotation
marks omitted).  "In this Circuit, to reach a trier of fact, an
employee does not have to point to unambiguous language to

---

[2] In the "Basis for Jurisdiction" section of the Amended Complaint, the
plaintiff listed "ERISA," and does not assert a violation of any other
rights.  Am. Compl. p.2.

support [a] claim.  It is enough [to] point to written language
capable of reasonably being interpreted as creating a promise on
the part of [the employer] to vest [the recipient's] . . .
benefits." Joyce v. Curtiss-Wright Corp., 171 F.3d 130, 134 (2d
Cir. 1999) (alterations in original) (quotation marks and
emphasis omitted); see also Boban v. Bank Julius Baer
Postretirement Health & Life Ins. Program, 723 F. Supp. 2d 560,
565 (S.D.N.Y. 2010).  However, Mr. Caban failed to point to any
written language capable of reasonably being interpreted as
creating a promise on behalf of the defendants that he could
retain his Vesting Credits.  Under the terms of the Plan, Mr.
Caban was not entitled to keep his Vesting Credits after a
permanent break in service, nor did the Plan promise him
otherwise.

Section 3.2(a)(2) of the Plan provides that an individual
must have 5 Vesting Credits to obtain a nonforfeitable right to
benefits at retirement.  According to the Plan, a non-vested
individual forfeits the individual's Vesting Credits upon a
permanent break in service.  The 2004 Summary Plan Description
("SPD") specifically warns that "[w]hen you have a permanent
break in service, you permanently lose all Vesting Credit and
Benefit Credit earned before the break and your participation is
cancelled.  Your service credit cannot be restored."  Thus, the
SPD unambiguously indicated that Mr. Caban would not be entitled

to his Vesting Credits upon incurring a permanent break in
service.  When, as in this case, "a [plan] document
unambiguously indicates whether retiree . . . benefits are
vested, the unambiguous language should be enforced." Devlin,
274 F.3d at 82 (alterations in original) (citation omitted).
Mr. Caban incurred a permanent break in service because he did
not work at least 300 hours in any year from 2006 until 2018,
and prior to his permanent break in service, he only had 2.75
Vesting Credits.  Under the unambiguous terms of the Plan, Mr.
Caban forfeited his previously-earned Vesting Credits and had no
right to recoup them.

Therefore, Mr. Caban has failed to show that the defendants
breached a contractual right owed to him under the terms of the
Plan.  Accordingly, Mr. Caban failed to state a claim under
Section 502(a)(1)(B) of ERISA.

### B.

Mr. Caban also failed to state a claim for breach of
fiduciary duty under Section 502(a)(2) because he has not shown
any misuse of Plan assets.  Section 502(a)(2) provides that a
participant or beneficiary can bring a civil action for a breach
of fiduciary duty under Section 409, 29 U.S.C. § 1109.  29 U.S.C.
§ 1132(a)(2).  Section 409(a) provides that an individual who
breaches a fiduciary duty "shall be personally liable to make
good to [the] plan any losses to the plan resulting from each

12

such breach." 29 U.S.C. § 1109(a). However, relief under this section protects the Plan, not individual beneficiaries. Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142 (1985) ("A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary."). Therefore, even if Mr. Caban could plausibly allege a breach of fiduciary duty, which he has not done, he still would not be entitled to the relief he seeks. Accordingly, Mr. Caban failed to state a claim under Section 502(a)(2).

### C.

Mr. Caban likewise failed to state a claim for equitable relief under Section 502(a)(3). Section 502(a)(3) provides that a participant or beneficiary can bring a civil action to obtain equitable relief to redress violations of ERISA or the Plan. 29 U.S.C. § 1132(a)(3) (a civil action may be brought "to obtain other appropriate equitable relief" to redress violations of ERISA or the terms of a plan); see also Varity Corp. v. Howe, 516 U.S. 489, 512 (1996) ("The language of [Section 502(a)(3) & (5)], creates two 'catchalls,' providing 'appropriate equitable relief' for 'any' statutory violation. This structure suggests that these 'catchall' provisions act as a safety net, offering

appropriate equitable relief for injuries caused by violations
that § 502 does not elsewhere adequately remedy."). The
standard of prejudice under Section 502(a)(3) requires a court
to be guided by "equitable principles, as modified by the
obligations and injuries identified by ERISA itself." CIGNA
Corp. v. Amara, 563 U.S. 421, 445 (2011). As in traditional
equity claims, a plan "may be reformed due to the mutual mistake
of both parties, or where one party is mistaken and the other
commits fraud or engages in inequitable conduct." Amara v.
CIGNA Corp., 775 F.3d 510, 525 (2d Cir. 2014); see also
Laurent v. PricewaterhouseCoopers LLP, 945 F.3d 739, 748 (2d
Cir. 2019) ("[O]ur own precedent too has identified fraud,
mutual mistake, or terms violative of ERISA as independent bases
that justify the equitable remedy of reformation under
§ 502(a)(3).") (internal quotation marks and emphasis omitted).
In addition to circumstances involving fraud or mutual mistake,
Section 502(a)(3) offers relief in a broader set of
circumstances. "[Section] 502(a)(3) authorizes district courts
to grant equitable relief -- including reformation -- to remedy
violations of subsection I of ERISA, even in the absence of
mistake, fraud, or other conduct traditionally considered to be
inequitable." Laurent, 945 F.3d at 748. The Court of Appeals
teaches that: "where the written terms of a pension plan
indisputably violate ERISA, but there is no allegation that the

violation stems from traditional fraud, mistake, or otherwise inequitable conduct[,] [w]e nonetheless conclude that reformation of the Plan was available here under ERISA § 502(a)(3), and that, consistent with our precedent, the district court was then authorized to enforce the reformed Plan as a second step under § 502(a)(1)(B)." Id. at 747.

However, as described above, Mr. Caban failed to plead facts sufficient to show that the defendants violated the terms of the Plan. Likewise, Mr. Caban failed to plead facts sufficient to show that the terms of the Plan violated ERISA. He alleged that the Plan is structurally defective in violation of ERISA.[3] To the contrary, the relevant terms of the Plan are more permissive than the minimum requirements of ERISA, and similar terms routinely have been upheld in courts.

---

[3] Courts reviewing funds for structural defects examine whether the establishment of the fund violates the Labor Management Relations Act (the "LMRA"). A court's jurisdiction to review a fund for structural defects exists where there are substantive violations of § 302(a) & (b) of the LMRA, which happen "not when funds are administered by the trust fund, but when they are 'pa[id], len[t], or deliver[ed]' to the trust fund, § 302(a), or when they are 'receive[d], or accept[ed]' by the trust fund, or 'request[ed], [or] demand[ed]' for the trust fund, § 302(b)(1)." Local 144 Nursing Home Pension Fund v. Demisay, 508 U.S. 581, 587 (1993) (alterations in original); Sheet Metal Workers' Local 28 of New Jersey Welfare Fund v. Gallagher, 960 F.2d 1195, 1209 (3d Cir. 1992) ("In situations where a fund established pursuant to Section 302(c)(5) runs afoul of these requirements, Congress has given courts jurisdiction to restrain such violations under Section 302(e) of the LMRA, 29 USC § 186(e)."); see also 29 U.S.C. § 186. Mr. Caban has not alleged violations of the LMRA in the establishment of the Fund, and therefore, he failed to state a claim that the Fund is structurally defective. See, e.g., DeVito v. Hempstead China Shop, Inc., 38 F.3d 651, 653 n.3 (2d Cir. 1994) "[The plaintiff] does not contest that the Benefit Fund was properly established under § 302(c)(5), but contends that it was subsequently operated in a manner inconsistent with § 302(c)(5). Demisay precludes this argument.").

Section 203, 29 U.S.C. § 1053, provides for minimum vesting requirements of retirement benefits. "A plan satisfies the requirements of this clause if an employee who has completed at least 5 years of service has a nonforfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions." 29 U.S.C. § 1053(a)(2)(A)(ii). In this context, a "year of service" means "a calendar year, plan year, or other 12-consecutive month period designated by the plan (and not prohibited under regulations prescribed by the Secretary) during which the participant has completed 1,000 hours of service" Id. § 1053(b)(2)(A). "In computing the period of service under the plan for purposes of determining the nonforfeitable percentage under [Section 203](a)(2)" an employer or a plan may disregard "in the case of a nonvested participant, years of service with the employer or employers maintaining the plan before any period of [5] consecutive 1-year breaks." Id. §§ 1053(b)(1) & (b)(3)(D)(i)(I). In this context, the term "1-year break in service" is defined as "a calendar year, plan year, or other 12-consecutive-month period designated by the plan (and not prohibited under regulations prescribed by the Secretary) during which the participant has not completed more than 500 hours of service." Id. § 1053(b)(3)(A). In this case, the Plan is more permissive than ERISA; it allows for an individual to avoid a 1-year break in service by working 300

hours in a 12-month period, rather than the 500-hour requirement of ERISA.  Therefore, not only are the Plan's vesting and forfeiture requirements compliant with ERISA, they are more forgiving than the minimums ERISA creates.

Courts routinely have enforced the very provisions at issue in this case and other similar provisions in pension plans.  In Liverpool v. New York City Dist. Council of Carpenters Pension Fund, No. 17-CV-4272, 2018 WL 2561025 (S.D.N.Y. June 4, 2018), the court approved provisions of a plan that provided for forfeiture of benefits when the pro se plaintiff incurred six 1-year breaks in service due to a workplace accident.  See id. at *5 ("To the extent that [the plaintiff] argues that his break in service was involuntary due to his injuries, this does not render the Fund's benefits denial arbitrary and capricious, because he still would not have qualified for benefits.").  In Fiscina v. New York City Dist. Council of Carpenters, 206 F. App'x 8, 10 (2d Cir. 2006), the court upheld the forfeiture of Vesting Credits based on the requirement that the plaintiff work 300 hours to avoid a 1-year break in service.  In Coyle v. New York City Dist. Council of Carpenters Pension Fund, No. 19-CV-5000, 2019 WL 5551862, at *4 (S.D.N.Y. Oct. 28, 2019), the court approved the provision that caused the plaintiff to incur a 1-year break in service because the plaintiff did not work at least 300 hours of covered employment.

The forfeiture provision in the Plan in this case is both permitted by ERISA and of the type that courts routinely approve.  Accordingly, Mr. Caban failed to state a claim under Section 502(a)(3).

### D.

Mr. Caban also failed to state a claim under Section 510. Section 510 provides that "[i]t shall be unlawful for any person to . . . discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."  29 U.S.C. § 1140.  Importantly, Section 510 does not authorize a suit against the Plan.  Section 510 proscribes conduct by "any person," which is defined as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization."  29 U.S.C. § 1002(9).  Courts that have considered the issue have concluded that a plan is not a "person" under this definition, and therefore cannot be named a defendant in a suit under Section 510.  See, e.g., Swanson v. U.A. Local 13 Pension Plan, 779 F. Supp. 690, 702 (W.D.N.Y. 1991) aff'd, 953 F.2d 636 (2d Cir. 1991) ("The court cannot ignore the statutory definition of 'person,' and [the

plaintiff's] § 1140 claim against the Plan itself must therefore be dismissed as a matter of law."); Adams v. Koppers Co., 684 F. Supp. 399, 401 (W.D. Pa. 1988) ("After reviewing the statutory text, the legislative history, and the case law, we conclude that a plan is not a proper defendant under 29 U.S.C. § 1140."); see also DeGrave v. Nat'l Automatic Merch. Ass'n Pension Plan, No. 04-CV-8147, 2005 WL 1204605, at *2-3 (N.D. Ill. May 18, 2005) (holding that a plan is not a proper defendant under Section 510, not on the basis of the definition of "person," but because "[a] fundamental prerequisite to a § 510 action is an allegation that the employer-employee relationship, and not merely the pension plan, was changed in some discriminatory way") (internal quotation marks and citation omitted).

Mr. Caban alleged discriminatory actions by the Union and certain individuals not listed as defendants in the Amended Complaint.  Moreover, the Amended Complaint did not specifically allege that the individually named defendants acted in a discriminatory manner or facilitated or aided in the discrimination.  Rather, the Amended Complaint cited to improper practices of non-parties and alleged that the Union discriminated against the plaintiff.  However, the Fund and the Plan are distinct from the Union.  See Galvez v. Local 804 Welfare Trust Fund, 543 F. Supp. 316, 317 (E.D.N.Y. 1992) ("[P]ension trust funds organized under ERISA or LMRA constitute

entities separate from and independent of the union."); see also

Lewis v. Benedict Coal Corp., 361 U.S. 459, 465 (1960) (holding

that where the fund's governing documents require that it be

used for the sole and exclusive benefit of the employees, their

families, and dependents, "the fund is in no way an asset or

property of the union."). And pension funds are not liable for

the acts of union employees. See, e.g., Pochoday v. Bldg. Serv.

32B-J Pension Fund, 5 F. App'x 16, 22 (2d Cir. 2001) ("Although

the employees of Local 670 allegedly told [the plaintiff] that

he would receive two separate pensions upon retirement, there is

no evidence that the defendants before us, the 32B-J Fund and

its Trustees, misrepresented the terms of the Plan to [the

plaintiff] in a material way."). In Maldonado v. Local 803 I.B.

of T. Health and Welfare Fund, No. 09-CV-3598, 2010 WL 2787841

(E.D.N.Y. July 12, 2010), the court dismissed the plaintiff's

complaint against a multiemployer employee benefit plan because

the plaintiff alleged discrimination by individuals and the

local union, but not by the legally-distinct fund. Id. at *2.

In this case, the plaintiff alleged discrimination in job

assignments by employees of the Union. However, Mr. Caban did

not allege discrimination by the Fund, nor did he allege

discrimination by the individually named defendants. Therefore,

Mr. Caban does not have any cognizable claim for the relief he

seeks against the named defendants under Section 510.

**E.**

Accordingly, Mr. Caban failed to state a claim under a liberal reading of the complaint.  "A pro se complaint should not [be] dismiss[ed] without [the Court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Chavis, 618 F.3d at 170 (alterations in original) (internal quotation marks omitted).  In this case, the plaintiff did not seek leave to amend his complaint.  Indeed, he did not respond at all to the motion to dismiss.  In any event, the plaintiff has given no indication in his complaint that he has a plausible claim against the defendants, and leave to amend can be denied when amendment would be futile.  See Tocker v. Philip Morris Cos., 470 F.3d 481, 491 (2d Cir. 2006). Moreover, as explained below, the plaintiff's claims are time barred, and so "better pleading will not cure the defect, and granting leave to amend would be futile."  Jordan v. Chase Manhattan Bank, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2015) (internal quotation marks omitted) (dismissing with prejudice certain claims in a pro se complaint because the claims asserted were time barred); see also Singh v. New York City Dist. Council of Carpenters Benefit Funds, No. 17-CV-7159, 2018 WL 4335511, at *4 (S.D.N.Y. Sept. 11, 2018) (same).  Therefore, the motion to dismiss is **granted** with prejudice.

IV.

Mr. Caban's claims are time barred.  In civil enforcement actions brought under Sections 502(a)(1)(B), 502(a)(3), and 510, ERISA does not provide a limitations period, and so "the controlling limitations period is that specified in the most nearly analogous state limitations statute." Miles v. New York State Teamsters Conference Pension and Ret. Fund Emp. Pension Ben. Plan, 698 F.2d 593, 598 (2d Cir. 1983); see also Abdul-Aziz v. Nat'l Basketball Ass'n, Players' Pension Plan, 784 F. App'x 46, 47 (2d Cir. 2019), cert. denied, 140 S. Ct. 2514 (2020).

For civil enforcement actions brought under Section 502(a)(1)(B), courts applying New York Law have held that the most analogous statute is the six-year limitation of Section 213 of New York Civil Practice Law and Rules, concerning contract claims.  See, e.g., Testa v. Becker, 910 F.3d 677, 682 (2d Cir. 2018) ("New York's six-year limitations period for contract actions, N.Y. C.P.L.R. 213, applies here, as it is most analogous to ERISA denial-of-benefits claims.") (internal quotation marks omitted); Miles, 698 F.2d at 598; Singh, 2018 WL 4335511, at *3; see also N.Y. C.P.L.R. § 213(2) ("The following actions must be commenced within six years: . . . an action upon a contractual obligation or liability, express or implied.").

In cases seeking equitable relief under Section 502(a)(3) that do not allege a breach of a fiduciary duty, courts also have applied a six-year statute of limitations based on Section 213 of New York Civil Practice Law and Rules.  See, e.g., Campanella v. Mason Tenders' Dist. Council Pension Plan, 299 F. Supp. 2d 274, 280 (S.D.N.Y. 2004), aff'd, 132 F. App'x 855 (2d Cir. 2005); Carollo v. Cement And Concrete Workers Dist. Council Pension Plan, 964 F. Supp. 677, 688-89 (E.D.N.Y. 1997) (applying the six-year statute of limitations from Section 213 of New York Civil Practice Law and Rules in a Section 502(a)(3) action seeking reformation of a pension plan).  Because the plaintiff's claim is most analogous to a breach of contract claim, the Court also applies the six-year limitations period from Section 213 of New York Civil Practice Law and Rules for Mr. Caban's claims under Section 502(a)(3).

With respect to Mr. Caban's claim under Section 510, the Court of Appeals long ago established that claims brought under Section 510 are most related to a claim for discrimination under the New York Workers' Compensation statute and have a two-year statute of limitations.  Sandberg v. KPMG Peat Marwick, L.L.P., 111 F.3d 331, 335 (2d Cir. 1997); see also N.Y. Work. Comp. Law § 120 ("Any complaint alleging such an unlawful discriminatory practice must be filed within two years of the commission of such practice.").

Unlike the claims under Sections 502(a)(1)(B), 502(a)(3), and 510, the claim under Section 502(a)(2) has a limitations period provided by ERISA. Specifically, the limitations period is the earlier of six years after the date of the last action which constituted part of the breach or three years after the earliest date on which the plaintiff had actual knowledge of the violation. § 413(1), 29 U.S.C. § 1113(1).

Accordingly, the relevant limitations periods in this case are six years for the claims under Sections 502(a)(1)(B) and 502(a)(3), the earlier of six years after the date of the last action which constituted part of the breach or three years after the earliest date on which the plaintiff had actual knowledge of the violation for the claim under Section 502(a)(2), and two years from the commission of the discriminatory acts alleged under Section 510. For all claims, the limitations period has passed.

For denial of benefits claims, "a cause of action under ERISA accrues upon a clear repudiation by the plan that is known, or should be known, to the plaintiff—regardless of whether the plaintiff has filed a formal application for benefits." Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan, 201 F.3d 44, 49 (2d Cir. 1999); see also Abdul-Aziz, 784 F. App'x at 47; Testa, 910 F.3d at 682 ("An ERISA denial-of-benefits claim ordinarily accrues when a plan denies a

24

beneficiary's formal application for benefits, may also accrue upon a clear repudiation by the plan that is known, or should be known, to the plaintiff — regardless of whether the plaintiff has filed a formal application for benefits.") (internal quotation marks omitted).

On April 21, 2010, the Fund informed Mr. Caban that he would lose his Vesting Credits at the end of 2010 if he did not attain 300 hours of covered employment, due to a permanent break in service.  Letters, such as this one, are sufficient to repudiate clearly the plaintiff's claim, thereby commencing the limitations period applied to Sections 502(a)(1)(B) and 502(a)(3).  See Singh, 2018 WL 4335511 at *3 (the statute of limitations began when the defendant sent a letter to the plaintiff "advising him that he had temporarily lost his 4.25 Vesting Credits and would permanently forfeit his credits if he failed to work at least 300 hours by the end of 1998").  Therefore, the limitations period began when the Fund sent the April 21, 2010 letter to Mr. Caban and elapsed six years later.  For Mr. Caban's claim under Section 502(a)(2), Mr. Caban knew of the allegedly wrongful action when he received the April 21, 2010 letter, and therefore the limitations period passed in April 2013.  For Mr. Caban's claim under Section 510, the limitations period commenced two years after the after the alleged discrimination ended, which was in 2005, after Mr. Caban

25

became unable to work.  Mr. Caban did not bring this action until July 1, 2019, which was well after all of the limitations periods passed.

Accordingly, the defendants' motion for summary judgment is **granted** because Mr. Caban's claims are time barred.

### CONCLUSION

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed, the arguments are either moot or without merit.  The defendants' motion to dismiss for failure to state a claim is **granted** as to all claims.  The defendants' motion for summary judgment is also **granted** as to all claims.  The Clerk is directed to enter judgment dismissing this case with prejudice.  The Clerk is also directed to close all pending motions and to close this case. Chambers will mail a copy of this Memorandum Opinion and Order to the pro se plaintiff at the docket address.


**SO ORDERED.**

Dated:     New York, New York
           September 28, 2020

                                  _____
                                        John G. Koeltl
                                  United States District Judge